126 N.J. Super. 417 (1974)
315 A.2d 40
ESSEX COUNTY WELFARE BOARD, PETITIONER-APPELLANT,
v.
NEW JERSEY BELL TELEPHONE COMPANY, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted November 5, 1973.
Decided January 31, 1974.
*419 Before Judges LYNCH, MEHLER and MICHELS.
Messrs. Cohen & Reichstein, attorneys for appellant (Mr. Ronald Reichstein, on the brief).
Mr. Joseph A. Hoffman, attorney for respondent.
Mr. George F. Kugler, Jr., Attorney General of New Jersey, submitted a Statement in Lieu of Brief on behalf of the Board of Public Utility Commissioners of the State of New Jersey (Mr. William Gural, Deputy Attorney General, of counsel).
The opinion of the court was delivered by MICHELS, J.S.C., Temporarily Assigned.
In mid-1968 petitioner applied to Bell Telephone for a charitable discount in connection with the 701 dial telephone system it was using, and Bell Telephone granted the application, allowing a charitable discount of 25% in the charge for local telephone service. Thereafter, in 1969 Bell Telephone's communications consultant approached the Essex County Freeholders for the purpose of discussing Bell Telephone's ability to supply more effective telephone service. Discussions of the advantages and costs of replacing the old 701 dial system with the modern Centrex telephone system were held. In August 1969 an oral presentation by Bell Telephone of the advantages and costs of the Centrex system was made to petitioner. In September 1969 petitioner and Bell Telephone entered into an agreement providing for installation in petitioner's offices of a Centrex telephone system which was completed in November 1970. Bell Telephone's regular bill to petitioner the following month for the new Centrex system did not reflect any charitable discount.
*420 Bell Telephone's predecessor companies began the practice of affording charitable discounts to qualified telephone customers in 1913. These discounts applied and apparently are still extended by Bell Telephone to certain charities using "plain old black telephone service." In 1960, however, Bell Telephone decided not to provide charitable discounts on any new services it introduced. Centrex was one of these new services. An application on rates and regulations for Centrex service was submitted by Bell Telephone to the New Jersey Board of Public Utility Commissioners (Board), indicating that the charitable discount would not be applicable to rates for the Centrex system. The application was approved by the Board, and the Tariff P.U.C.  N.J. No. 1, Part 1  General, Section 32, which contained the exemption, became effective in 1962. Hence, qualified charities who purchased Centrex service after that year were not entitled to the traditional charitable discount.
Petitioner welfare board filed a petition with the Board of Public Utilities Commissioners alleging that it was never informed that installation of a Centrex telephone system would result in termination of the charitable discount, and therefore argued that Bell Telephone was estopped from depriving it of the 25% discount on this service. It also insisted there was no justification for allowing the discount to qualified charities using one telephone system and not allowing the discount to qualified charities using another telephone system. Petitioner asked the Board to amend Tariff P.U.C.  N.J. No. 1, Part 1  General, Section 32, to permit the charitable discount for Centrex users and to rule that it was entitled to the traditional 25% reduction on its local service telephone bill from the date of installation of the new Centrex system.
A hearing was held before a Board hearing examiner, who filed a detailed report and recommendations denying petitioner the relief sought. The Board adopted that report and recommendations as its decision from which this appeal was taken.

*421 I.
Petitioner contends that the Board's decision which adopted the report and recommendation of the hearing examiner was substantively defective because a specific finding was not made on the issue of whether petitioner was informed by Bell Telephone that it would lose its charitable discount in changing over to a Centrex system. The examiner did not make this specific finding in spite of the fact that there was a sharp conflict in the evidence whether Bell Telephone so informed petitioner. However, since petitioner was charged with knowledge of the tariff and bound by it, this finding was not essential to the decision below.
N.J.S.A. 48:2-21(a) provides that "the board may require every public utility to file with it complete schedules of * * * every * * * rate, toll, fare or charge made, charged or exacted by it for any product supplied or service rendered within this State, as specified in the requirement." The Board, by virtue of this authority, and pursuant to Administrative Order 14:280, has set forth the following requirement:
Every public utility shall file with the Board and keep open to public inspection in each office where applications for service may be made, tariffs applicable to its affected service area, showing all rates and charges made, established, or enforced, or to be charged or enforced, all rules and regulations relating to rates and charges or services used or to be used, anl all general privileges and facilities granted or allowed. The same shall be readily accessible to the public at all times during office hours, and on demand by any person shall be produced for examination immediately. [N.J.A.C. 14:11-7.2(a)]
It is well established that a tariff required by law to be filed by a telephone company is not a mere contract; it is the law. Carter v. American Tel. & Tel. Co., 365 F.2d 486, 496 (5 Cir.1966), cert. den. 385 U.S. 1008, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967); Shehi v. Southwestern Bell Tel. Co., 382 F.2d 627, 629 (10 Cir.1967). As such, it is binding upon subscribers whether the customer actually knows of the *422 regulation or not. Warner v. Southwestern Bell Tel. Co., 428 S.W.2d 596 (Mo. Sup. Ct. 1968); Alcazar v. Southwestern Bell Tel. Co., 353 S.W.2d 933, 936 (Tex. Civ. App. 1962).
Moreover, were Bell Telephone to grant petitioner a charitable discount for the Centrex service contrary to its filed and published tariffs, it would clearly violate N.J.S.A. 48:3-1 which prohibits preferential rates. It is settled law that a utility which is required by law to file its rate through published tariffs is without authority to charge a customer less than the rates quoted in such tariffs. Southern Pacific R.R. Co. v. Wheaton Brass Works, 5 N.J. 594 (1950).
The findings by the examiner, which were adopted by the Board of Public Utility Commissioners, that Bell Telephone did not intentionally mislead petitioner in its negotiation for Centrex service, and that there was sufficient information available to petitioner that should have indicated to it that Bell Telephone would not supply the Centrex service with the discount provision that was available to its former type of service, could reasonably have been reached on sufficient credible evidence in the record. Close v. Kordulak Bros., 44 N.J. 589, 599 (1965); Clover Hill Swimming Club v. Goldsboro, 47 N.J. 25, 36 (1966).

II.
Petitioner further contends that the decision of Bell Telephone not to extend the charitable discount to users of new telephone systems such as the Centrex service is discriminatory in that it forces charities to continue the use of inefficient and outmoded systems in violation of N.J.S.A. 48:3-4. We disagree.
N.J.S.A. 48:3-4 provides:
No public utility shall make or give, directly or indirectly, any undue or unreasonable preference or advantage to any person, locality or particular description of traffic, or subject any particular person, *423 locality or particular description of traffic to any prejudice or disadvantage.
The hearing examiner found that since Bell Telephone treated all charitable customers alike in not extending the charitable discount to them for new telephone services, Bell Telephone was not guilty of discrimination. Bell Telephone made a managerial decision not to provide charitable discounts to users of newly introduced systems, such as Centrex, which was reviewed and accepted by the Board of Public Utility Commissioners in the exercise of its rate-making power when the applicable tariff was filed.
It is stated in 86 C.J.S., Telephone and Telegraph Radio & Television, § 72 at 86-87:
The obligation resting on telegraph and telephone companies, and the like, to render equal and undiscriminating service to all proper applicants requires that the same charges shall be made to all persons in the same class for the furnishing of similar service, unless otherwise provided by statute.

* * * * * * * *
Not every discrimination as to rates is objectionable, but only such a discrimination as under the circumstances is unreasonable and unjust, so discriminations founded on reason and justice may be made, and different rates may be charged to different patrons where there are substantial differences in the character of the services rendered or facilities furnished, or differences in the conditions and circumstances affecting the inconvenience and expense to the company of giving the service or furnishing the facilities. [Emphasis added]
Accordingly, the finding by the hearing examiner, adopted by the Board, that the charitable discount was not applied by Bell Telephone in a discriminatory manner, could reasonably have been reached on sufficient credible evidence in the record. See Close v. Kordulak, supra; Clover Hill Swimming Club v. Goldsboro, supra. The tariff involved, which does not extend the charitable discount to users of new telephone systems, is not discriminatory and does not violate the provisions of N.J.S.A. 48:3-4.
*424 For the foregoing reasons, the decision of the Board of Public Utility Commissioners denying Essex County Welfare Board's petition to compel a charitable discount from New Jersey Bell Telephone Company in connection with its newly installed Centrex telephone service is affirmed.