61197. CITY OF COMMERCE v. DUNCAN & GODFREY, INC.

BANKE, Judge.

The plaintiff/appellee owns and operates a supermarket which purchases electricity from the City of Commerce, Georgia. It sued to

recover over-payments allegedly made for that service from July of 1975, when it took over the operation of the supermarket, through the end of 1978, when the city began billing the plaintiff for electricity at a cheaper rate, which was based on peak demand rather than total consumption. The plaintiff alleges that up until the end of 1978, the city kept it in ignorance of the availability of this alternate rate, despite its complaints to the city that it was being overcharged for electricity.

The standard rate at which the city billed for electricity was based on the number of kilowatt-hours consumed, as measured by a standard meter. In 1974, the city established a policy of allowing commercial customers who consumed more than 1,000 kilowatt-hours per month the option of being billed on the basis of peak demand, as measured during half-hour intervals by a special meter designed for that purpose. This billing method was evidently designed to favor businesses which consumed electricity at a more or less constant rate.

When the plaintiff acquired the supermarket in July of 1975, the building was equipped with a standard meter. The city accordingly began sending bills based on the standard kilowatt-hour rate. Upon receipt of the first bill, the store manager immediately complained to the city's director of operations that he felt the charge was excessive. The director responded by sending an employee to check the meter but, when no malfunction or reading error was discovered, did nothing further. Over the next three and a half years, the manager made numerous other complaints to the city of the same nature; and the city responded by rechecking the meter on at least six occasions. However, it was only on the last such occasion, in late 1978, that the plaintiff was advised that it would benefit by converting to a demand meter. The plaintiff immediately elected to do so; and, when the new meter was finally installed in early 1979, the electric bills dropped significantly.

The city's director of operations testified that to his knowledge the plaintiff's was the only supermarket in town which had operated without a demand meter during the period in question. He further testified that although it was the city's policy not to install a demand meter unless one was specifically requested by an eligible customer, a request from the plaintiff to be billed at the most favorable rate available would have "opened the door" to its being advised of the benefits of converting to the demand rate.

To establish damages, the plaintiff offered the testimony of an expert in electrical engineering to the effect that if the supermarket had been on a demand meter throughout the entire period, its total electric bill would have been $10,950 less than it actually was. The

witness testified that he had arrived at this opinion by taking the monthly kilowatt-hour readings recorded from July of 1975 to the date the demand meter was installed, and comparing them with the demand readings recorded thereafter. He stated that he was able to calculate a relationship between the readings based on information which he received to the effect that there had been no substantial change in the store's operating hours and equipment between the two periods, combined with his own knowledge of the relationships between these two types of measurement in other commercial establishments. The jury returned a verdict of $10,950 in accordance with his opinion. The city appeals. *Held:*

1. The central question before us is whether, based on the facts known to it, the city had a legal duty to disclose to the plaintiff the existence of the demand meter rate and the benefits which could be achieved by converting to it. Faced with an almost identical situation in a 1937 case, the Texas Supreme Court held that customers of a public electric utility who are not in a position to understand the utility's complex and highly technical rate structure are entitled to assume that the utility is charging them at the most favorable rate available to them. El Paso Elec. Co. v. Raynolds Holding Co., 128 Tex. 495 (100 SW2d 97, 108 ALR 744) (1937). Specifically, the court stated that, "[b]eing in a position both as to an understanding of the true meaning of the schedule and as to the appliances or methods for ascertaining the measured demand applicable to [its customers], [the utility's] obligation was to deal fairly and give [its customers] the benefit of the most favorable rate which they were entitled to receive. Oklahoma Gas & Electric Co. v. Shipley, 190 Ark. 758, 80 SW2d 635; Salisbury & S. R. Co. v. Southern Power Company, 179 N. C. 18, 101 SE 593, 12 ALR 304." *Id.* at 100 SW2d 101. See also 64 AmJur2d, Public Utilities, § 133, p. 658. This court delivered itself of an analogous ruling in *Macon Gas Co. v. Crockett,* 58 Ga. App. 361, 365 (198 SE 267) (1938). The plaintiff in that case had entered into a contract with a gas company whereby he paid the company to extend a gas line to his house, and the company agreed to pay him a rebate for each new customer who was later connected to the extension. Called upon to decide whether the plaintiff was obligated to find out for himself when a new customer was connected to the line, or whether the gas company was obligated to disclose this to him and pay him as a matter of course, the court held as follows: "The taking on of a consumer was always within the knowledge of the gas company, but not necessarily within the knowledge of [the plaintiff]. [The plaintiff] necessarily had to rely on the good faith of the gas company to make payment to him whenever a consumer was taken on his extension. There was therefore a relationship between the parties in its nature

fiduciary, by which the gas company owed a duty to [the plaintiff] to pay him for every consumer taken on his extension, notwithstanding [the plaintiff] may not be aware of the fact that a consumer was taken on." *Id.* at 365.

In the case before us now, it is undisputed that until the city finally disclosed the availability of the demand billing system, the plaintiff had no knowledge of its existence or of the savings which it could achieve by converting to it. There is no suggestion that this ignorance resulted from a failure to exercise reasonable diligence to acquire the information. The city, on the other hand, had every reason to assume that the demand billing system would be more favorable to the plaintiff, not only because of its superior understanding of its own rate schedule, but also because of its knowledge, as expressed by its director of operations, that all of the other supermarkets in town had elected to take advantage of the demand system. On the basis of this evidence and of the cases above cited, we hold that the city had a legal duty to disclose to the plaintiff the availability of the more favorable rate.

We reject the city's contention that recovery of any overpayments by the plaintiff is precluded by Code § 20-1007, which provides, in pertinent part, that "[p]ayments of taxes or other claims, made through ignorance of the law, or where the facts are all known, and there is no misplace (sic) confidence and no artifice, deception, or fraudulent practice, used by the other party, are deemed voluntary, and cannot be recovered back . . ." Since the breach of duty on which recovery in this case is based is the city's failure to disclose salient facts to the plaintiff, the payments cannot be deemed voluntary within the language of this code section.

Similarly inapplicable is Code Ann. § 69-1017, which provides, in pertinent part, that "[t]he governing authority of each municipality shall have legislative power to adopt clearly reasonable ordinances, resolutions, or regulations. relating to its property, affairs, and local government for which no provision has been made by general law . . ." The city's authority to establish rates for electrical service is not at issue here; rather, what is at issue is the city's obligation to make available sufficient information about those rates to enable its customers to take advantage of the options available to them. Compare *Jarrett v. City of Boston,* 209 Ga. 530 (74 SE2d 549, 40 ALR2d 1327) (1953).

2. The testimony of the plaintiff's expert regarding damages was both admissible and sufficient to authorize the jury's award. The witness testified that on the basis of the detailed information made available to him regarding the plaintiff's electrical consumption, none of which was controverted, he was able to offer a "reasonably

accurate" estimate as to the plaintiff's damages, based on his training and experience in comparing demand measurements with standard measurements. The jury was entitled to rely on this estimate as being based upon "reasonable certainty" rather than upon speculation or conjecture. See generally *Crankshaw v. Stanley Homes, Inc.,* 131 Ga. App. 840 (2), 843 (207 SE2d 241) (1974).

3. The city contends that the introduction into evidence of the expert's work sheets showing his computations was unlawful in that it placed a double emphasis on his testimony. This enumeration of error cannot be considered in view of the fact that no such objection was raised at trial.

4. The court did not err in charging the jury on the law regarding actions for money had and received. While the city argues that there was no evidence of unjust enrichment, we find that, to the extent the city was able to charge more money for its electricity because it failed to comply with a duty to disclose the existence of the alternate, less expensive rate, it was unjustly enriched.

5. Also enumerated as error are several jury instructions to the effect that the city had a duty not to discriminate against the plaintiff or deny it equal protection or due process of law. While we agree that there was no issue of discriminatory treatment in this case, and thus that the charges should not have been given, we find the error harmless in view of our holding that the city, as the operator of a public utility, violated its duty to disclose to the plaintiff the availability of the rate most favorable to it.

6. The following charge is also enumerated as error: "I charge you that where a fiduciary relationship exists the law raises the rule that neither party may take selfish advantage of his trust or deal with the subject matter of the trust in such way as to benefit himself or prejudice the other except in the exercise of the utmost good faith and with the full knowledge and consent of the other. Business shrewdness, hard bargaining and astuteness to take advantage of the lack of knowledge or negligence of another is totally prohibited as between persons standing in such a relationship to each other." This charge was clearly erroneous. Although the city's duty of disclosure to the plaintiff might be described as fiduciary "in nature," there was no evidence that an actual fiduciary relationship existed between the parties. Cf. *Macon Gas Co. v. Crockett,* supra, at 365. Again, however, we hold that the error was harmless in light of the uncontroverted evidence establishing a breach of duty on other grounds.

7. The court did not err in charging the language cited in Division 1 of this opinion from El Paso Elec. Co. v. Raynolds Holding Co., 100 SW2d, supra, at 101.

*Judgment affirmed. Deen, P. J., and Carley, J., concur.*

DECIDED JANUARY 21, 1981 — REHEARING DENIED
FEBRUARY 4, 1981 — 

*L. Eddie Benton, Jr.,* for appellant.
*Gibson Dean II,* for appellee.