Argued and submitted February 12, affirmed August 29, reconsideration denied
October 31, 1990, petition for review denied January 15, 1991 (311 Or 87)

WILDISH SAND & GRAVEL CO.,
*Appellant,*

*v.*

NORTHWEST NATURAL GAS COMPANY,
*Respondent.*

(A8709-05743; CA A50955)

796 P2d 1237

James N. Westwood, Portland, argued the cause for appellant. With him on the briefs were John R. Bakkensen, Melinda S. Eden and Miller, Nash, Wiener, Hager & Carlsen, Portland.

John R. Faust, Jr., Portland, argued the cause for respondent. With him on the brief was Schwabe, Williamson & Wyatt, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

### NEWMAN, J.

Plaintiff brought this action, asserting that defendant charged it a higher rate for natural gas than it charged plaintiff's competitors. Plaintiff appeals a summary judgment for defendant. We affirm.

These facts are not in dispute. Plaintiff is an asphalt and concrete producer, with two plants in Eugene. From 1978 to 1986, plaintiff purchased natural gas from defendant under Rate Schedule 23, which provided for interruptible service at an incentive rate for customers with alternative fuel capacity. Schedule 23 included a special oil option for customers whose alternative fuel was oil. Plaintiff had alternative fuel capacity and burned oil at one plant. At its second plant, it burned propane, but that plant was also capable of burning oil. Defendant did not offer an oil option agreement to plaintiff.

In 1983, to counter dropping oil prices, defendant instituted Schedule 55, a lower incentive rate. Defendant made Schedule 55 available to customers with an oil option agreement and to very large industrial customers who could switch to oil in case gas service was interrupted. In 1985, as oil prices continued to drop, defendant made a new version of Schedule 55 available to oil option customers and to those, like plaintiff, who had the capacity to burn oil. Plaintiff was eligible for Schedule 55 rates.

Defendant held annual meetings in various locations, to which it invited industrial customers. One item of business was to present information about the new Schedule 55 rates. Plaintiff sent a representative, Wolter, to the meeting in Eugene in September, 1985. Plaintiff does not claim that Wolter made an inquiry at the meeting specifically about possible eligibility for Schedule 55 rates when or after defendant presented information about them. At one point in the meeting, Wolter inquired about sharing a line between the concrete plant that plaintiff had acquired and its asphalt plant:

> "I asked a question, and it is a question that I had asked before quite a few times, even when we were Parsons Ready-Mix at the time, why we could not hook up to the main line and come off the same meter that the asphalt plant came off of so that we could buy the better—cheaper rate. * * * Their response was, 'We'll send a representative and talk about it,

but we think the answer is no.' Which is what they had told me before several times."

No representative of defendant ever called.

Plaintiff contacted a Portland construction company in late spring or early summer, 1986, to learn how that company was dealing with the high price of gas. The Portland firm informed plaintiff about Schedule 55, under which an eligible customer would pay a substantially lower rate for gas than under Schedule 23. At about the same time, plaintiff lost a contract award to a Eugene competitor. Plaintiff alleges that its competitor was able to submit a lower bid because it was paying lower gas rates under Schedule 55.

Plaintiff asked defendant about Schedule 55 in June, 1986, and soon thereafter began receiving service under that schedule. It now seeks to recover as damages the difference between the Schedule 23 rates that it paid and the lower Schedule 55 rates, which it asserts it should have paid, and to recover lost profits from the construction contract that it was not awarded.

Plaintiff asserts that the court erred when it granted defendant a summary judgment, because there is a genuine issue of material fact about whether Wolter's inquiry at the Eugene meeting constituted a request for information under OAR 860-21-010(5), which provides:

"At the time of application for new service, or upon subsequent request, the utility shall assist applicant or customer in selecting the most advantageous rate to meet individual service requirements. The applicant or customer shall be responsible for making the final selection of a rate schedule."[1]

---

[1] OAR 860-21-010 reads, in its entirety:

"(1) Each utility shall, upon request, furnish its customers with such information as is reasonable to permit them to secure efficient service and select appliances properly adapted to their service needs. Natural gas utilities shall, upon request, inspect and adjust customer-owned appliances and facilities for safe and efficient operation.

"(2) Each utility providing metered service shall, upon request, inform its customers how to read meters, either in writing or by explanation at the offices of the utility.

"(3) Each utility shall keep on file and open for public inspection at its offices, complete rate schedules, contract forms, rules, and regulations of the utility, and a copy of the Commissioner's rules and regulations.

"(4) Each utility shall supply, upon request, a copy of the tariffs applicable to

It also argues that defendant had a duty to inform it of the availability of Schedule 55 rates, even if plaintiff did not specifically request that information. Defendant responds that plaintiff did not plead that it made a request and that, in any event, Wolter's inquiry at the Eugene meeting did not trigger a duty of the utility to respond under the rule with information regarding Schedule 55. Defendant also asserts that it had no duty to inform plaintiff about rates beyond the duty to file its rate schedules with the PUC, ORS 757.205, the duty to keep those schedules on file for use of the public in all its business offices, ORS 757.240, and the duty to respond to requests about them.[2]

Even assuming that plaintiff has pled enough to raise the issue of whether Wolter's inquiry was a request under OAR 860-21-010(5) for information about rates, there is still no genuine issue of material fact. His question was a specific inquiry about whether the concrete plant and the asphalt plant could reduce costs by sharing a pipeline or a meter. Schedule 55, available to customers with standby oil capacity, has nothing to do with any rate savings that could occur if two facilities share a pipeline or a meter. No reasonable person,

the type or types of service furnished to the customer.

"(5) At the time of application for new service, or upon subsequent request, the utility shall assist applicant or customer in selecting the most advantageous rate to meet individual service requirements. The applicant or customer shall be responsible for making the final selection of a rate schedule.

"(6) Notices approved by the Commissioner shall be posted in a conspicuous place in each utility office where credit matters are transacted, setting forth the rights and responsibilities of customers under these rules. The notices shall be printed in large boldface type and shall be written in language that is easy to understand."

In its commentary accompanying enactment of OAR 860-21-010 in 1983, the Public Utility Commission (PUC) stated:

"The proposed rule is designed to ensure that applicants and customers receive necessary assistance from the utility. This assistance should be available when service is instituted and at any time a customer wishes to reevaluate the initial decision. At the same time, utilities should not be faced with the responsibility of continually monitoring the usage of their customers, or be confronted with overbilling claims for 'errors' that could be determined only with the advantage of hindsight. Section (5) has therefore been revised to specify that the customer shall bear final responsibility for selection of an appropriate rate schedule."

[2] When plaintiff's representative eventually contacted defendant about Schedule 55, it promptly provided the information and changed plaintiff's rates accordingly. Defendant complied fully with OAR 860-21-010(5).

therefore, could construe Wolter's inquiry about "the better—cheaper rate" if the concrete plant and the asphalt plant shared a pipeline or a meter as a request for a general rate consultation under OAR 860-21-010(5).

Plaintiff asserts that, even without a specific request for information about rates, defendant had a duty to inform it about Schedule 55. Plaintiff relies on Oregon's Anti-Price Discrimination Law, ORS chapter 646. ORS 646.040 prohibits charging different prices to similarly situated customers when the discrimination would have a substantial anticompetitive effect. Plaintiff asserts that defendant's failure to inform it of Schedule 55 enabled defendant to charge similarly situated customers different prices.[3]

ORS chapter 646 does not impose an affirmative duty on defendant to inform customers of rates in the absence of a specific request for that information. At most, it prohibits making information about prices available to some customers and not to others. *See Forster v. Kawasaki Motors Corp.,* 73 Or App 439, 446, 698 P2d 1001 (1985). All of defendant's eligible customers, however, had equal access to the information contained in Schedule 55.[4] *See* ORS 757.205; ORS 757.240. Defendant did not violate ORS chapter 646.

The court did not err when it granted a summary judgment to defendant.

Affirmed.

---

[3] Plaintiff also argues that, under ORS 756.200, the court should have permitted it to prove common law theories of liability. ORS 756.200 specifies that a utility's duties are the same as prescribed by the common law, except where otherwise provided by statute. Plaintiff was free to prove common law theories of liability but had to show that defendant breached a common law duty that had not been modified by the regulatory statutes. Plaintiff did not make that showing.

[4] Plaintiff does not claim that defendant discriminated against it on the ground that it specifically informed another customer of Schedule 55 in the absence of that customer's specific request.