No. 76,713

GRINDSTED PRODUCTS, INC., *Appellant,* v. KANSAS CORPORATION COMMISSION and KANSAS CITY POWER & LIGHT COMPANY, *Appellees.*

(937 P.2d 1)

Opinion filed April 25, 1997.

*C. Edward Peterson*, of Finnegan, Conrad & Peterson, of Kansas City, Missouri, argued the cause, and *Jeremiah D. Finnegan*, of the same firm, was with him on the briefs for appellant.

*William G. Riggins*, of Kansas City, Missouri, argued the cause and was on the brief for appellee Kansas City Power & Light Company.

*Janette W. Corazzin*, assistant general counsel, argued the cause, and *David J. Heinemann*, general counsel, was with her on the brief for appellee Kansas Corporation Commission.

The opinion of the court was delivered by

LOCKETT, J.: Plaintiff manufacturer claimed that it was eligible for economic development discounts in the price of electricity purchased from defendant public utility for electric service to a manufacturing plant. The defendant regulatory agency determined that (1) the manufacturer was not eligible for the economic development tariff; (2) the utility had no affirmative duty to disclose the economic development tariff to the manufacturer; and (3) no discrimination occurred. The district court granted the utility's motion to dismiss, finding that the manufacturer's complaint failed to state a claim for which relief could be granted, and affirmed the regulatory agency. The manufacturer's appeal to the Court of Appeals was transferred to this court. K.S.A. 20-3018(c).

**FACTS:**

Grindsted Products, Inc., (Grindsted) manufactures bulk food products at a facility located in Johnson County, Kansas. Kansas City Power & Light Company (KCPL), a certificated public electric utility, provides electric service to Grindsted. In 1989, Grindsted began planning and development of an expansion at the Johnson County location. An architectural firm retained by Grindsted discussed the expansion with KCPL and provided KCPL with specifications for the expanded facility. Although Grindsted states that the discussions involved "rates," the only direct evidence in the record of these discussions is a letter dated December 9, 1989, from the architectural firm to KCPL relating to revised specifications for the "Ammonia Project." This document was apparently not part of the record at the Kansas Corporation Commission (KCC) but was appended to Grindsted's reply brief in the district

court. However, since the case was decided on a motion to dismiss, the court would have considered only the allegations in the complaint. The complaint did not allege that Grindsted had direct discussions with KCPL in which it requested the most advantageous rate.

Grindsted completed the expansion and began receiving electric service in May 1990. KCPL initially placed Grindsted's expanded facility on the Primary Service—Large (PL) tariff. In 1991, KCPL reviewed usage at Grindsted's facility, determined it qualified for a lower tariff, General Service—Large (GL), and refunded the difference.

The Economic Development Rider (EDR) to which Grindsted claims entitlement was filed by KCPL with the KCC effective July 20, 1988. The stated purpose of the EDR was to encourage "industrial and commercial business development in Kansas. These activities will attract capital expenditures to the State, diversify [KCPL's] customer base, create jobs and serve to improve the utilization of efficiency of existing Company facilities." The EDR discount was 30% for year 1 of service, decreasing by 5% per year for 4 years to a final discount of 10% in the fifth year. The 1988 EDR stated that its discounted rates are only available in conjunction with government economic development programs where incentives have been offered to locate or expand facilities in the KCPL service area. With respect to applicability, the 1988 EDR stated: "Upon the request of the customer and acceptance by the Company, the provisions of this rider will be applicable to: 1) new industrial and commercial customers and 2) additional separately-metered facilities of existing industrial and commercial customers."

The 1988 EDR was later superseded by another EDR in December 1991. The 1991 EDR stated:

"New or expanded facilities under construction or otherwise committed to operation prior to the effective date of this Rider are ineligible for service under this Rider. The availability of this Rider shall be limited to industrial and commercial facilities not involved in selling or providing goods and services directly to the general public. Customers receiving service under this Rider must qualify under the criteria of this Rider or have been served under the superseded Rider on December 31, 1991."

Grindsted alleges it was unaware of the existence of the EDR until late 1993, although it had been filed with the KCC since 1988. In July 1993, Grindsted applied for service under the EDR. KCPL denied Grindsted's request because Grindsted had failed to apply for the EDR tariff prior to deciding to expand its facility. KCPL stated:

"The EDR is a tariff specifically designed to provide an incentive for prospective additional load where the customer decision to build, relocate or expand has not been made. It is the only tariff with a purpose clause, and its intent is to help the customer decide to locate within KCPL's territory, thus bringing value to the company. The Grindsted expansion was handled by the Austin Co. Engineering firm, who presented site specific plans to KCPL for service consideration. From these plans, it was apparent that the customer had already reached a business decision to expand the existing facility and no inquiry was made to KCPL concerning incentives, nor to indicate that the final site selection was in question. We believe that the steps taken by KCPL to ensure timely and effective service to this new building were proper and that the customer is not eligible for service under the EDR tariff."

In other words, since Grindsted had decided to expand its facility prior to learning about the EDR incentives, KCPL decided the provisions of the EDR did not apply to Grindsted.

On February 7, 1994, Grindsted filed a complaint with the KCC, Docket No. 190,097-U. Count I was styled "Qualifications for the EDR" and alleged that its facility had qualified for the EDR by its terms. The complaint does not allege that KCPL had a legal duty to inform Grindsted of the existence of the EDR or to inform Grindsted of the lowest available tariff. In the prayer for relief, Grindsted sought an order determining that KCPL had improperly failed and refused to apply the EDR tariffs to Grindsted and directing that Grindsted be served under the EDR tariff prospectively.

Count II of Grindsted's complaint was styled "Discrimination." It alleged that KCPL had unjustly, unreasonably and unlawfully discriminated against Grindsted in violation of K.S.A. 66-109 by failing to disclose and refusing to apply the EDR tariff to Grindsted. Grindsted requested that the KCC order KCPL to serve Grindsted under the EDR.

Simultaneously, Grindsted filed an action in the district court of Johnson County against KCPL, requesting an interpretation of the EDR and damages pursuant to K.S.A. 66-176. The KCC intervened in that action for the purpose of addressing jurisdiction. The district court ultimately dismissed the action for lack of jurisdiction. Grindsted appealed, and the Court of Appeals affirmed the district court's dismissal in *Grindsted Products, Inc. v. Kansas City Power & Light Co.*, 21 Kan. App. 2d 435, 448, 901 P.2d 20 (1995), finding that the KCC had jurisdiction over issues of tariff interpretation.

Subsequently, Grindsted filed a second action with the KCC, Docket No. 191,200-U. Grindsted requested that the KCC construe the EDR, determine that Grindsted qualified for the EDR, find that KCPL overcharged Grindsted, and order a refund. Grindsted also filed a motion to consolidate the two complaints before the KCC. KCPL filed motions to dismiss the complaints.

On November 21, 1994, the KCC issued its order consolidating the complaints and ordering their dismissal because Grindsted's complaint had failed to state a claim for which relief could be granted. First, the KCC found that Grindsted qualified neither for the 1988 EDR tariff nor the current EDR tariff, filed in 1991. The KCC noted that the current EDR tariff stated that "expanded facilities . . . committed to operation prior to the effective date of this Rider are ineligible for service under this Rider. . . . . Customers receiving service under this Rider must qualify under the criteria of this Rider or have been served under the superseded Rider on December 31, 1991." The KCC observed that since Grindsted had conceded that its expanded facility opened in May 1990, prior to the effective date of the current EDR Rider, and it was not served under the superseded Rider, it was not eligible to be served under the current EDR.

The KCC determined that Grindsted was not qualified for applicability under the 1988 EDR because the EDR provided that it would be applied to qualified customers "[u]pon the request of the customer and acceptance by the Company." The KCC pointed out that Grindsted's request for service under the EDR was not made until July 1993, a year and a half after the 1988 EDR had ceased to exist.

The KCC rejected Grindsted's argument that failure of the KCPL to disclose the availability of the EDR precluded Grindsted from applying for the EDR and constituted discrimination in violation of K.S.A. 66-109, which provides in part:

"No common carrier or public utility . . . shall, knowingly or wilfully, charge, demand, collect or receive a greater or less compensation for the same class of service performed by it within the state, . . . than is specified in the printed schedules or classifications . . . ."

The KCC found that Grindsted's discrimination argument was based upon the existence of an affirmative duty that KCPL provide notice of the EDR to Grindsted and disclose each available tariff to each individual customer. The KCC noted that numerous courts in other jurisdictions had determined that when a utility files a tariff with its regulatory authority, its customers are charged with constructive notice of the tariff. The KCC concluded that "it is beyond dispute that Grindsted had legal or constructive notice, and any lack of actual notice is irrelevant."

After reaching this conclusion, the KCC noted the following KCPL General Rules and Regulations Applying to Electric Service, on file with the KCC:

"Rule 2.01 APPLICATION FOR SERVICE:

"(A) A customer applying for electric service shall, if requested by the Company, furnish sufficient information on the size and characteristics of the load and the location of the premises to be served and such additional information as to enable the Company to designate the class or classes of electric service it will supply to the Customer and the conditions under which they will be supplied. A separate application shall be made for each class of electric service to a Customer at each premises of the Customer."

"Rule 6.03 CHOICE AND APPLICATION OF RATE SCHEDULES:

"(A) The Customer shall be responsible for determining in advance, through application to the company, the class or classes of electric service which will be designated by the company and made available to the Customer and the applicable conditions of such electric service. The Customer shall be responsible for determining whether the Customer's installation, and all portions thereof, are and will be suitable for operation at the voltage, phase and other characteristics of the class of service to be supplied by the Company.

. . . .

"(C) CHOICE BY CUSTOMER: If a Customer is eligible to take electric service from the Company under any one of two or more applicable rate schedules

available for the class of electric service to be supplied by the Company, the choice of such rate schedule shall lie with the Customer.

"(D) ASSISTANCE BY COMPANY: A customer will be assisted by the Company in the selection of the rate schedule under which electric service will be supplied to such Customer, based on the information at hand, but the responsibility for the selection of such rate schedule shall lie with the Customer."

After reviewing KCPL's rules and regulations, the KCC concluded that responsibility for selecting among optional rate schedules fell on Grindsted.

The KCC then took notice that on December 30, 1983, it had issued an order in Docket No. 114,337-U requiring jurisdictional utility companies, among other things, to notify customers of proposed and approved rates, inform new customers of applicable rate schedules and available information, and prepare a summary of existing rate schedules and notify customers of its availability in conjunction with a monthly bill once a year.

The KCC found that its 1983 order followed case law from other jurisdictions determining that notice of applicable rate schedules and information is proper upon filing with the KCC, and actual notice or knowledge is not necessary. The KCC also deemed pertinent the requirement of its 1983 order that a utility prepare a summary of existing rate schedules and notify customers of its availability in conjunction with a monthly bill once a year. The KCC noted that KCPL's monthly billing statement reminds customers that rate information is available from any KCPL office and listed office locations and telephone numbers, along with the general 24-hour information number of 471-KCPL. The KCC found that providing this information on a monthly basis exceeded its requirement that information be provided once a year.

The supporting case law cited by the KCC for the proposition that there is no affirmative duty on the part of a public utility to provide affirmative individual notice to a customer of optional rates included *Southeastern Land Co. v. Louisville G. & E. Co.*, 262 Ky. 215, 90 S.W.2d 1 (1936) (utility was required to file its schedules of special and optional rates with the board of public works, and this was all it was required to do to bring notice to its customers); *Pantebakos v. Company*, 81 N.H. 441, 128 A. 534 (1925) (com-

pany's only duty is the duty imposed by statute requiring the company to file its rates and charges); *Essex Cty. Welfare Bd. v. N.J. Bell Tel. Co.*, 126 N.J. Super. 417, 315 A.2d 40 (1974) (the customer is charged with knowledge of the tariff, and bound by it); *Wildish Sand & Gravel v. Northwest Natural Gas Co.*, 103 Or. App. 215, 796 P.2d 1237 (1990) (statute did not impose an affirmative duty on defendant to inform customers of rates in the absence of a specific request for that information), *rev. denied* 311 Or. 87 (1991); *Spear & Co. v. P.S.C.*, 105 Pa. Super. 240, 161 A. 441 (1932) (no duty to select a rate rests with the utility); and *Gulf, Colorado & Santa Fe Ry. Co. v. McCandless*, 190 S.W.2d 185 (Tex. Civ. App. 1945) (it is not necessary that a shipper be told of a choice of rates, and it is presumed the shipper knows the provisions of the schedules on file).

Finally, the KCC looked to the purpose of the EDR for further support that Grindsted was not entitled to service under the tariff. The KCC observed that the stated purpose of the 1988 EDR was to provide an incentive for development and expansion of industrial and commercial facilities in Kansas. The KCC observed that since Grindsted was not aware of the existence of the EDR at the time it decided to expand its facility, the EDR could not have provided an incentive for the expansion. The KCC found that, from a reading of the text of the EDR's purpose, Grindsted did not fall within the class of customer which the EDR intended to benefit and Grindsted should not be considered qualified for service under the EDR.

The KCC concluded that it is a practical impossibility to require a utility company to ensure that each and every customer receive the most advantageous rate. It found such a requirement would be overly burdensome, both administratively and financially for the company, and the potential liability resulting from a company's failure to monitor each account to be "tremendous" both for the company and the regulators. The KCC found that the ultimate decision to obtain the best rate lies with the customer.

The KCC concluded that pursuant to KCPL's rules and the case law from other jurisdictions, KCPL had no affirmative duty to actually inform Grindsted of the existence of the EDR. It found that

Grindsted's claim in its complaint that it was entitled to service under the EDR due to KCPL's failure to provide notice was not sufficient to state a claim for relief and dismissed the complaint.

After the KCC denied Grindsted's petition for reconsideration, Grindsted filed a petition for judicial review of the KCC order with the district court of Johnson County pursuant to K.S.A. 77-601 *et seq.* and K.S.A. 66-118c, claiming that (1) the KCC improperly construed the EDR contrary to principles of tariff interpretation; (2) the KCC improperly determined that public utilities have no duty to disclose available tariffs to customers who may be eligible for service under more than one tariff; and (3) the KCC erred in determining that KCPL did not discriminate between similarly situated commercial customers. KCPL was allowed to intervene. The district court summarily denied the petition, stating:

"The petitioner's argument is predicated on the premise that the utility had an affirmative duty to inform the petitioner of the existence of the initial EDR. Under existing law there is no such duty. The court finds and determines that the petitioner is not qualified to receive service under KCPL's current EDR; that the petitioner was not eligible to receive notice under the initial EDR because it never requested such service prior to the cancellation of the EDR rider; that, under the law, the petitioner had constructive notice of the existence of the EDR and that the subject utility had no duty to provide individual notice to the petitioner of the existence of the EDR."

## SCOPE OF REVIEW

Our scope of review of an administrative order dismissing a petition is whether the agency has erroneously interpreted or applied the law. K.S.A. 77-621(c)(4). Grindsted contends that the KCC order is unlawful and unreasonable.

As noted previously, Grindsted's action did not survive KCPL's motion to dismiss for failure to state a claim for which relief may be granted, K.S.A. 60-212(b)(6). When a motion to dismiss under K.S.A. 60-212(b)(6) raises an issue concerning the legal sufficiency of a claim, the question must be decided from the well-pleaded facts of plaintiff's complaint. Dismissal is justified only when the allegations of the petition clearly demonstrate plaintiff does not have a claim.

In considering a motion to dismiss for failure of the petition to state a claim for relief, a court must accept the plaintiff's description of that which occurred, along with any inferences reasonably to be drawn therefrom. However, this does not mean the court is required to accept conclusory allegations on the legal effects of events the plaintiff has set out if these allegations do not reasonably follow from the description of what happened or if these allegations are contradicted by the description itself. *Bruggeman v. Schimke*, 239 Kan. 245, 247, 718 P.2d 635 (1986); *Knight v. Neodesha Police Dept.*, 5 Kan. App. 2d 472, Syl. ¶¶ 1, 2, 3, 620 P.2d 837 (1980).

## DISCUSSION

Grindsted additionally argues that (1) the KCC order violated the filed rate doctrine, (2) a duty to disclose tariff options is required by a 1983 KCC order regarding billing practices in Docket No. 114,337-U, and (3) KCPL had a duty to disclose under its own rules and regulations. These arguments were not raised before the KCC. K.S.A. 66-118b provides that "[n]o cause of action arising out of any order or decision of the [KCC] shall accrue in any court to any party unless such party shall petition for reconsideration . . . . No party shall, in any court urge or rely upon any ground not set forth in the petition."

In *Peoples Natural Gas v. Kansas Corporation Commission*, 7 Kan. App. 2d 519, 526, 644 P.2d 999, *rev. denied* 231 Kan. 801 (1982), the court stated:

"K.S.A. 66-118b requires that there be set forth in an application for rehearing the specific grounds upon which the applicant considers the order to be unlawful and unreasonable. The allegation of grounds must be sufficiently specific and direct to apprise the commission and opposing parties of the actual points relied on. Any ground not set forth in the application for rehearing cannot be relied upon in judicial review proceedings. It is not necessary that in an application for judicial review the grounds upon which the applicant considers the order to be unlawful or unreasonable be stated in precisely the same language used in the application for rehearing; however, any ground not specifically and directly alleged in the application for rehearing may not be raised in an application for judicial review. A general or mere allegation in the application for rehearing of unlawfulness or unreasonableness is insufficient to raise an issue for judicial review."

Because Grindsted's arguments were not raised in the petition, they cannot be considered by this court.

## Tariff Interpretation/Eligibility of Service Under the EDR

Grindsted next claims the district court erred in sustaining the KCC's order dismissing its complaint. Grindsted argues that the KCC improperly interpreted the EDR tariff. Grindsted argues further that the KCC and district court improperly determined that KCPL had no duty to disclose the terms of the EDR to Grindsted. Finally, Grindsted argues that the KCC order, as affirmed by the district court, results in discrimination by allowing similarly situated customers to be served at different rates. KCPL and the KCC counter that (1) the tariff was properly interpreted and Grindsted was not qualified to receive service under either the 1988 or 1991 EDR; (2) the filing of the EDR constituted legal notice to Grindsted and KCPL has no duty to provide actual individual notice of its tariffs to its individual customers; (3) Grindsted's action amounts to an improper request for a court-imposed duty for utilities to inform individual customers of the most advantageous rates, when the regulation of utilities is legislative in nature; and (4) Grindsted's claim of discrimination is based upon a nonexistent legal duty to provide actual individual notice to customers of applicable rates.

Grindsted first takes issue with the KCC's determination that the intended purpose of the 1988 EDR was to provide an incentive for industrial expansion by providing incentive rates for eligible customers. We agree with the KCC conclusion that since Grindsted determined to expand its facility without knowledge of the EDR, the EDR could not have been an incentive for the expansion. Therefore, this argument has no merit.

Next, Grindsted asserts it was qualified to receive the EDR rate and argues that the KCC misinterpreted the provision of the EDR tariff. With respect to its eligibility for the 1988 EDR, Grindsted acknowledges that one of the requirements for being served under the initial EDR was that the customer must request the EDR. The EDR stated that qualified customers would receive service under the EDR "[u]pon the request of the customer and acceptance by

the Company." Grindsted argues, however, that there is no time limitation specified to make the request. This argument has little merit because even though the 1988 EDR provided no specific time requirement, clearly the request had to be made while the 1988 EDR was in effect.

Grindsted concedes that it was not qualified for applicability of the 1991 EDR. The 1991 or current EDR provides that "expanded facilities . . . committed to operation prior to the effective date of this Rider are ineligible for service under this Rider . . . Customers receiving service under this Rider must qualify under the criteria of this Rider or have been served under the superseded Rider on December 31, 1991." Since the Grindsted expanded facility became operational in May 1990, long before the effective date of the current Rider, it is ineligible for service under the 1991 EDR unless it had already been served under the initial 1988 EDR. It is undisputed that Grindsted never received service under the initial EDR; therefore, Grindsted is not entitled to service under the 1988 or current EDR.

## Duty to Inform

The central issue in this case is whether KCPL had a duty to inform Grindsted of the existence of the EDR tariff at the time the architectural firm submitted plans for the Grindsted expansion. Grindsted argues that the fault for the delayed request for service under the 1988 EDR lies with KCPL because the utility did not inform Grindsted of the existence of the EDR. In other words, although Grindsted's complaint contains no allegation that KCPL had a duty to provide actual notice to customers of available or the most advantageous rates, Grindsted's argument is based upon the existence of a such duty.

Grindsted cites numerous authorities to support its assertion that KCPL had a duty to disclose the existence of the EDR. However, when these authorities are analyzed, the resulting conclusion is that (1) filing the EDR tariff with the KCC constituted sufficient constructive notice of the EDR to Grindsted; therefore, actual notice was not required and (2) no jurisdiction has judicially imposed a

duty to inform individual utility customers of the most advantageous tariffs.

Some of the cases relied upon by Grindsted are based upon requirements imposed legislatively, pursuant to statutes, regulations, or tariffs, that do not exist under Kansas law. *Belozer Poultry Farms, Inc. v. Portland General Electric Company*, 134 Pub. Util. Rep. 4th (PUR) 288, 293 (Or. 1992), involved a state regulation requiring the utility to assist the consumer in selecting "the most advantageous rate to meet individual service requirements." *Crownover Lumber Company, Inc. v. Columbus Southern Power Company*, 141 Pub. Util. Rep. 4th (PUR) 506, 508, 511 (Ohio 1993), involved a tariff which stated that if a customer qualified for more than one rate, "the Company will endeavor to advise him as to which rate schedule is the most advantageous for the prospective service." In addition, an Oregon regulation required the utility to provide information about alternative rate schedules upon request.

*El Paso Electric Co. v. Raynolds Holding Co.*, 100 S.W.2d 97 (Tex. Comm. App. 1937), provides no support for Grindsted's argument that KCPL had a legal duty to inform it of the EDR because that was a case involving a miscalculation of a customer's bill under the applicable tariff. It is noteworthy that the Texas Commission of Appeals stated in that opinion: "We do not intend to hold that public utility companies in every instance are under a legal obligation, prior to installation of service, to see that customers receive the most economical service and rates." 100 S.W.2d at 102.

*City of Commerce v. Duncan & Godfrey*, 157 Ga. App. 337, 277 S.E.2d 266 (1981), is the only case cited by Grindsted which provides some support for its duty to inform claim. The facts in *Duncan & Godfrey*, however, are distinguishable because the case dealt not with a tariff which had been filed with and approved by the appropriate regulatory authority, but a municipal policy of allowing customers to install demand meters. In *Duncan & Godfrey*, the standard rate by which the city billed for electricity was based upon the number of kilowatt hours consumed, as measured by a standard meter. In 1974, the city established a policy of allowing commercial customers who consumed more than 1,000 kilowatt hours per

month the option of being billed on the basis of peak demand with a special meter. The customer made constant complaints about the cost of electricity and was never informed about the existence of the policy. There was no indication that these rates were tariffs filed with a local utility commission. Other authorities cited by Grindsted are not persuasive: Neither *Hughes Aircraft v. North American Van Lines,* 970 F.2d 609 (9th Cir. 1992), nor *Welliver v. Federal Exp. Corp.*, 737 F. Supp. 205 (S.D.N.Y. 1990), discusses the concept of legal notice of filed and approved tariffs.

*Wildish Sand & Gravel v. Northwestern Natural Gas Co.*, 103 Or. App. 215, 796 P.2d 1237 (1990), *rev. denied* 311 Or. 87 (1991), on the other hand, provides support for the proposition that there is no duty to provide affirmative individual notice to a customer of optional rates in the absence of any specific regulatory or tariff provisions requiring such notice. The *Wildish* case not only involved Oregon statutes specifying that "the utility shall assist applicant or customer in selecting the most advantageous rate" but also provided that "[t]he applicant or customer shall be responsible for making the final selection of a rate schedule." 103 Or. App. at 218 n. 1. (These regulations are similar to KCPL rules cited above which place the burden on customers to inform themselves regarding the most advantageous rates.) The plaintiff in *Wildish* made the same argument made by Grindsted—that the utility had a duty to inform it about an optional rate and that the utility discriminated against it by failing to do so. In rejecting this argument, the court held that Oregon's anti-discrimination statute "does not impose an affirmative duty on defendant to inform customers of rates in the absence of a specific request for that information. At most, it prohibits making information about prices available to some customers and not to others." 103 Or. App. at 220. The Oregon court held that "[a]ll of defendant's eligible customers, however, had equal access to the information contained in Schedule 55." 103 Or. App. at 220.

In *Southeastern Land Co. v. Louisville G. & E. Co.*, 262 Ky. 215, 90 S.W.2d 1 (1936), the customer made the argument that the company had a duty to provide individual notice of an optional rate to its customers. The Kentucky court, however, held that the com-

pany's filing of the rate schedules with the board of public works was all the notice necessary to be given the customer and that the rates were, at all times, available. 262 Ky. at 221-22.

*Gulf, Colorado & Santa Fe Ry. Co. v. McCandless*, 190 S.W.2d 185 (Tex. Civ. App. 1945), involved a shipper's choice of rates under a filed rate schedule. The Texas court held: "It is not necessary under the law that a shipper be told he has a choice of rates at the time he offers the goods for shipment and signs the contract. He is presumed to know the provisions as set out in the schedule on file." 190 S.W.2d at 186. In *Spear & Co. v. P.S.C.*, 105 Pa. Super. 240, 161 A. 441 (1932), the Pennsylvania court approved language in the report of the Public Service Commission which stated:

> " 'Complainant contends further that if optional rates are proper, it is the duty of the company to calculate which will be the cheapest for each consumer and to bill him upon that basis. In practice, such a procedure would be well nigh impossible. A utility had the duty to make proper classifications of its service and to prescribe rates accordingly, but having done this and having made all proper information available to its patrons, its obligation has been met. . . . The choice between two such reasonable rates may properly be left to the consumer under ordinary circumstances.' " 105 Pa. Super. at 242-43.

*Pantebakos v. Company*, 81 N.H. 441, 442, 128 A. 534 (1925), dealt with a customer's complaint that the company "failed to use reasonable means to make him comprehend how great a saving he would make if he installed a second meter." The New Hampshire court held that the company's only duty was to file its rates and charges with the proper authority. In *Re New York Telephone Company*, 133 Pub. Util. Rep. 4th (PUR) 208, 210 (N.Y.1992), the regulation stated: "Where alternate service which may meet an applicant's requirements is available, the utility shall make a reasonable effort to advise the applicant of the most economic service available and to assist the applicant in his choice of service."

Here, it is undisputed that both the 1988 and 1991 EDRs were filed with the KCC and were approved according to law. Under the circumstances, does the filing with the KCC constitute sufficient constructive knowledge to Grindsted of the EDR or is actual notice of the tariff required to the customer? As the previously cited cases hold, the general rule is that filing a tariff provides the

requisite notice. See *Turner Lumber Co. v. C., M. & St. P. Ry.*, 271 U.S. 259, 70 L. Ed. 934, 46 S. Ct. 530 (1926); see also *Chicago & Alton R.R. Co. v. Kirby*, 225 U.S. 155, 56 L. Ed. 1033, 32 S. Ct. 648 (1912) (lack of knowledge of published rates and schedules is no defense; one is presumed to have known); *Herring v. Alabama Great Southern R. Co.*, 236 Ala. 618, 621, 184 So. 180 (1938); *Warner v. Southwestern Bell Telephone Company*, 428 S.W.2d 596, 601 (Mo. 1968); *Mellon v. Stockton & Lampkin*, 225 Mo. App. 122, 125, 35 S.W.2d 612 (1931); *In re Application of Saddle River*, 71 N.J. 14, 29, 362 A.2d 552 (1976) (provisions of a tariff are binding on a customer whether the customer knows them or not); *Essex Cty. Welfare Bd. v. N.J. Bell Tel. Co.*, 126 N.J. Super. 417, 315 A.2d 40 (1974); *First Cent. Serv. Corp. v. Northern Bell Tel.*, 95 N.M. 509, 511, 623 P.2d 1023 (Ct. App. 1981); *Southwestern Bell Telephone Co. v. Rucker*, 537 S.W.2d 326, 331 (Tex. Civ. App. 1976); *Alcazar v. Southwestern Bell Telephone Company*, 353 S.W.2d 933, 936 (Tex. Civ. App. 1962); and *Wadel v. American Airlines*, 269 S.W.2d 855, 857 (Tex. Civ. App. 1954) (fact that tariff is on file with proper authorities is binding regardless of customer's lack of knowledge and company's failure to inquire).

In Kansas, the regulation of public utilities is legislative—not judicial. *Kansas Gas & Electric Co.. v. Kansas Corporation Comm'n*, 239 Kan. 483, 491, 720 P.2d 1063 (1986); *Cities Service Gas Co. v. State Corporation Commission*, 201 Kan. 223, 232-33, 440 P.2d 660 (1968). Tariffs are those terms and conditions which govern the relationship between the utility and its customers. Public utilities in this state are required to file their tariffs with the KCC. K.S.A. 66-101c. Rates, fares, tolls and charges imposed by a public utility upon its customers are required to be just and reasonable, not unjustly or unreasonably discriminatory and not unduly preferential. K.S.A. 66-101d. Tariffs filed with regulatory agencies must comport with any conditions, schedules, and provisions authorized by the agency, and amended tariffs and schedules of rates are not effective unless approved by the KCC. Tariffs duly filed, however, generally bind both the utility and the customer. *Southwestern Bell Tel. Co. v. Kansas Corporation Commission*, 233 Kan. 375, 377, 664 P.2d 798 (1983).

A legally established tariff should be construed in the same manner as a statute. *Shehi v. Southwestern Bell Telephone Company*, 382 F.2d 627 (10th Cir. 1967). Tariff schedules are to be construed as a whole, including footnotes, from the ordinary and popular meaning of the words used. *Raymond City Coal & T. Corp. v. New York Cent. R. Co.*, 103 F.2d 56 (6th Cir. 1939). Interpretation of tariffs should be reasonable and, preferably, consistent with the purpose of the tariff. *Coca-Cola Co. v. Atchison, T. & S.F. Ry. Co.*, 608 F.2d 213 (5th Cir. 1979).

Grindsted concedes that Kansas law imposes no direct duty to disclose tariff alternatives to customers who inquire about rates but argues such a duty can be implied from Kansas statutes regarding public accessibility to rate information. This argument has no merit. In Kansas, KCPL is required to publish and file with the KCC copies of all schedules of rates. K.S.A. 66-101c. Tariffs duly filed generally bind both the utility and the customer. In addition, the KCC requires that KCPL prepare a summary of its current tariffs and notify its customers of its availability once a year in a monthly bill. It is undisputed that KCPL exceeded this requirement by providing such notice to customers every month. Therefore, KCPL's notice of rates complied with Kansas law.

To summarize, Grindsted is asking this court to impose additional disclosure requirements upon public utilities which do not exist in Kansas. Grindsted's claim for relief is based solely upon its argument that (1) it would have requested the applicability of the 1988 EDR (and therefore the 1991 EDR) if it had known about it and (2) it did not know because KCPL failed to inform Grindsted of the EDR. In its brief before the district court, Grindsted acknowledged that it was requesting judicial imposition of a requirement that, under Kansas law, must be legislatively imposed. Grindsted stated: "Kansas law does not appear to provide any express provisions concerning the duty of a public utility to disclose its tariffs." Grindsted stated in its petition for reconsideration before the KCC: "Grindsted does not dispute that the law of the land presently charges parties with constructive notice of filed tariffs. However, Grindsted submits that the Commission should adopt . . . a policy . . . that requires certain disclosure where alter-

native tariffs are available." No other jurisdiction appears to have judicially imposed the legal duty to inform requested by Grindsted, and we decline to do so.

Turning to Grindsted's claim of discrimination, we note the claim depends upon whether there is an affirmative duty on KCPL's part to notify Grindsted of the EDR. The court in *Wildish Sand & Gravel*, 103 Or. App. at 220, relied upon by the KCC, held that Oregon's anti-discrimination statute (similar to the one in Kansas), at most, prohibited making information about prices available to some customers and not to others. The Oregon court held that "[a]ll of defendant's eligible customers, however, had equal access to the information contained in Schedule 55." 103 Or. App. at 220. Similarly, here, all of KCPL's customers had equal access to information about the EDR, which was all that is required under Kansas law. Furthermore, assuming Grindsted could have qualified for the EDR, the responsibility for selecting optional rate schedules under KCPL Rule 6.03, which is part of KCPL's tariffs and approved by the KCC, was Grindsted's.

In conclusion, Grindsted was not entitled to the 1988 EDR tariff because its expansion was planned without knowledge of the EDR and because Grindsted did not request it as required; therefore, the EDR was not an incentive in the decision to expand. Grindsted did not qualify for the 1991 EDR under its term. Finally, KCPL had no duty to inform Grindsted of the existence of the EDR tariff. A legally filed tariff constitutes constructive notice. Under the circumstances, Grindsted's claim of discrimination fails. Since Grindsted's complaint failed to state a claim for which relief could be granted, the decision of the district court is affirmed.

Affirmed.