623 P.2d 1023

**FIRST CENTRAL SERVICE CORPORATION and Dona Ana Inns, Inc., Plaintiffs-Appellants,**

v.

**MOUNTAIN BELL TELEPHONE and Audrey Farmer, Defendants-Appellees.**

**No. 4826.**

Court of Appeals of New Mexico.

Jan. 27, 1981.

**510**

Charles W. Cresswell, Nina H. Adamson, Martin, Martin, Lutz & Cresswell, P. A., Las Cruces, for plaintiffs-appellants.

H. Perry Ryon, Albuquerque, for defendants-appellees.

## OPINION

SUTIN, Judge.

Through legal proceedings, First Central Service Corporation and Dona Ana Inns, Inc., its wholly owned subsidiary, obtained possession of Las Cruces Inn, not a party to this action, the telephone number of which was 524–3671. First Central wanted continued and uninterrupted service of this telephone number. Mountain Bell claimed a prior indebtedness of Las Cruces Inn in the amount of $5,581.00 for service rendered this telephone number. It agreed to continue the service under this telephone number if the prior bill were paid, or if the bill were not paid, it would render continued service under a different number.

First Central filed a verified complaint for damages and an application for a temporary restraining order. On the same day, and without notice, a temporary restraining order was issued and the matter set for hearing.

At the hearing, the president of First Central testified that, in dealing with the public interest, its business would be seriously affected if there was a change in phone number. He also testified that First Central did not owe the money.

Mountain Bell, without any objection, introduced in evidence Mountain Bell's General Exchange Tariff, Section 20, Sixth Revised Sheet, approved by the State Corporation Commission. Paragraphs N(1) and N(2) read:

1. The subscriber has no property right in the telephone number nor any right to continuance of service through any particular central office, and *the Telephone Company may change the telephone number* or central office designa-

tion *of a subscriber whenever it considers it desirable in the conduct of its business.*

2. In any case where existing service is continued for a new subscriber, the telephone number may be retained by the new subscriber only if the former subscriber consents *and an arrangement acceptable to the Telephone Company is made to pay all outstanding charges against the service.* [Emphasis added.]

The trial court entered a Final Judgment in which it made findings of fact. Among them were:

\*      \*      \*      \*      \*      \*

8. That if plaintiffs are not willing to pay the outstanding charges against said phone service, Mountain Bell Telephone has an absolute right to discontinue use of the same phone number.

\*      \*      \*      \*      \*      \*

10. That within five days from the entry of this judgment plaintiffs are required to elect whether or not they will pay to the defendant, Mountain Bell Telephone, the outstanding charges ... or ... elect to not pay ... (First Central elected not to pay).

11. ... In the event the plaintiffs decide or determine that they will appeal this decision ... this judgment is stayed and the temporary restraining order will continue in effect until the further order of an appellate court.

These findings were carried forward in the judgment from which First Central appealed. We affirm.

The only issue on this appeal is whether the trial court's construction of the applicable tariffs was erroneous.

Mountain Bell is subject to the provisions of the "Telephone and Telegraph Company Certification Act." Section 63–9–1, N.M.S.A.1978, et seq.

Section 63–9–7(B) provides in pertinent part:

The holder of a certificate [Mountain Bell] shall render continuous and adequate service to the public and shall not discontinue, reduce or impair service ... *except ordinary discontinuance of service*

*for nonpayment of charges....* [Emphasis added.]

■ It is a matter of public policy that Mountain Bell can discontinue service for nonpayment of the charges incurred by Las Cruces Inn. It is also the law that a tariff required to be filed is not a contract. It is the law. *Shehi v. Southwestern Bell Telephone Company,* 382 F.2d 627 (10th Cir. 1967); *Carter v. American Telephone and Telegraph Co.,* 365 F.2d 486 (5th Cir. 1966). "As such, it is binding upon subscribers whether the customer actually knows of the regulation or not." *Essex County Welfare Bd. v. New Jersey Bell Tel. Co.,* 126 N.J.Super. 417, 315 A.2d 40, 42 (1974), or whether the subscriber has specifically agreed to it or not, *Clarke v. General Tel. Co. of Southeast,* 268 S.C. 92, 232 S.E.2d 26 (1977).

■ A telephone utility "has the right to establish reasonable rules and regulations for furnishing service to patrons and for the conduct of its business. Ordinarily regulations so made will be presumed to be reasonable and necessary, unless the contrary is shown." *Southwestern Bell Tel. Co. v. Reeves,* 578 S.W.2d 795, 799 (Tex.Civ.App. 1979).

■ First Central is a subscriber for telephone service. It has no property right in telephone number 524–3671. It knows that Mountain Bell may change the telephone number whenever it considers it desirable in the conduct of its business. Mountain Bell decided that First Central can retain the existing service it if pays all outstanding charges against the service. First Central refused to pay contrary to Tariff N(2). Mountain Bell had an absolute right to discontinue use of the same telephone number.

The trial court's construction of the unmistakably clear language of the tariffs was not erroneous. It was the only conclusion to reach under the various rules used to construe the meaning of the language of the law.

■ First Central argues that a telephone company cannot deprive a subscriber of the use of a telephone number because it

is a valuable asset of a business. It relies on *Clayton Home Equip. Co. v. Florida Tel. Corp.*, 152 So.2d 203 (Fla.App.1963), and *Johnson v. Southern Bell Telephone and Telegraph Company*, 169 So.2d 36 (Fla.App. 1964). This rule is applicable where, after a telephone number is given a subscriber in business, the telephone company, without any justifiable cause, assigns the telephone number to another subscriber, or refuses to assign to his new business a subscriber's telephone number listed in his name. These are contract cases, not affected by statutes or tariffs.

In *Shehi, supra*, the telephone company cut off Shehi's service for his failure to pay. It reactivated the telephone number, formally held by Shehi, and assigned it to a competitor. The telephone company asserted that, when the phone service was properly terminated for nonpayment of charges, it had an unqualified right to treat the disconnected number as its sole property. It relied on paragraph N(1), "no property right" tariff, *supra*. The court said:

> ... The tariff provision negatives any claim of a customer to a property right in a telephone number but cannot be construed to authorize the telephone company to exercise arbitrary dominion over the number so as to cause harm and injury to another. [382 F.2d 630.]

*Shehi* falls short of the answer in the instant case because of the absence of paragraph N(2), *supra*. We may assume that *Shehi* led Mountain Bell to issue paragraph N(2) to protect itself.

First Central urges this Court to adopt the decision in *Price v. South Central Bell*, 294 Ala. 144, 313 So.2d 184 (1975), 75 A.L. R.3d 692 (1977). The facts are the same, the tariffs are different. In Alabama, when a new subscriber desires to continue the use of the old subscriber's number, but will not pay the old subscriber's bill, the new subscriber is entitled to continuous service under the old number if "there exists no relationship, business or otherwise, between the old and new subscribers...." Under the Alabama tariffs, First Central, if it had no relationship with the old subscriber, would be entitled to continuous service without payment of the prior bill of Las Cruces Inn.

Paragraph N(2), *supra*, under which First Central is bound, sets forth a tariff of opposing force. First Central is entitled to retain the old subscriber's telephone number "only if ... an arrangement acceptable to the Telephone Company is made to pay all outstanding charges against the service." This "arrangement" to pay is not an obstacle because First Central admits that it is able to pay. Omitting the "arrangement," First Central is entitled to continuous service "only if it pays the outstanding charges against the service." The cases above discussed appear in the Annot. *Telephone Company's Right to Change Subscriber's Telephone Number*, 75 A.L.R.3d 700 (1977).

Mountain Bell's position is fair and reasonable. It is compelled by law to render continuous and adequate service to the public. As a result, losses for service rendered occur when subscribers in business ventures fail. Among others who suffer losses are those who finance business adventures that fail. Companies like First Central, however, are not compelled to finance business adventures. Its losses occur due to adverse economic conditions or lack of acumen in its business operation. Between two reliable and innocent corporations which render service to a business venture, a utility which is compelled by law to render service can protect itself from the other by use of tariffs or regulations approved by a state agency. That business corporation which is not compelled by law to render service has no legal method by which it can protect itself against the utility. It must seek protection by way of indemnity or otherwise from the business to which it rendered service.

First Central is charged with knowledge of Mountain Bell's rights with respect to change of telephone numbers. It cannot plead "ignorance of the law," a maxim sanctioned by centuries of experience because "Ignorance of the law is no excuse." Mountain Bell is not charged with knowledge of First Central's relationship with a

subscriber. Under these circumstances, First Central is at fault for its failure to protect itself. It must, therefore, suffer the loss of paying the prior charge or the loss incurred with a changed number.

The trial court correctly decided that Mountain Bell had an absolute right to discontinue service rendered Las Cruces Inn on its number 524–3671 for failure of First Central to pay the outstanding charges.

Mountain Bell claims that "the Doctrine of Exhausting of Administrative Remedies clearly applies to this case." Mountain Bell is mistaken. Neither Article XI, Section 7 of the New Mexico Constitution nor the "Telephone and Telegraph Company Certification Act" grants the State Corporation Commission general power and exclusive jurisdiction. *Smith v. Southern Union Gas Co.*, 58 N.M. 197, 269 P.2d 745 (1954) demands an exhaustion of administrative remedies whenever a state agency is granted "general and exclusive power and jurisdiction to regulate and supervise every public utility in respect to its ... service regulations...." Section 62–6–4, N.M.S.A.1978. This power and jurisdiction is limited to the Public Service Commission which governs electrical, gas and water utilities.

Under Section 63–9–11(A) of the Telephone and Telegraph Company Certification Act,

> Complaint *may* be made by any interested party setting forth any act or omission by a telephone company alleged to be in violation of any provision of this act.... [Emphasis added.]

First Central could have filed a complaint before the State Corporation Commission under the above Act. It preferred the courts. Even though the results would probably be the same, expenses and delay were avoided.

In enacting the Certification Act, the legislature might have been affected by the personal views of Justice McGhee in *Smith*. He said:

> The writer has scant regard for this statute by which the appellant may at the whim of the commission be compelled to journey to Santa Fe with his witnesses and lawyer to present what should be a simple matter of proof, and then take his appeal to the district court if he be dissatisfied with the decision, but has reluctantly concluded the statute ... must be upheld unless we are to overrule many of our former decisions and emasculate a large portion of our administrative law, a result which he believes many informed people would not regret. [58 N.M. 200–201, 269 P.2d 745.]

The writer of this opinion agrees with Justice McGhee. No utility commission or state agency should be allowed to usurp the jurisdiction granted district courts under Article VI, Section 13 of the New Mexico Constitution.

The judgment of the district court is affirmed except as to the continuance of the temporary restraining order. The temporary restraining order is dissolved. Telephone service under number 524–3671 shall be discontinued immediately unless First Central pays the outstanding charges against this service.

First Central shall pay the costs of this appeal.

IT IS SO ORDERED.

LOPEZ and WALTERS, JJ., concur.