**ATKIN WRIGHT & MILES, chartered, a Utah corporation, Plaintiff and Respondent,**

v.

**The MOUNTAIN STATES TELEPHONE AND TELEGRAPH CO. et al., Defendant and Appellant.**

**No. 18232.**

Supreme Court of Utah.

Oct. 22, 1985.

David S. Dolowitz, Floyd Jensen, Salt Lake City, for Mt. States.

J. MacArthur Wright, St. George, Hans Q. Chamberlain, Cedar City, for plaintiff and respondent.

STEWART, Justice:

This suit arose out of an error made by Mountain States Telephone & Telegraph Co. (Mountain Bell) in listing the same telephone number in the yellow-page directory for the law firm of Atkin, Wright and Miles (Atkin) and also for the law firm of Allen, Thompson and Hughes (Allen). A jury awarded general and punitive damages to Atkin, and Mountain Bell appeals the award. We reverse.

When Mountain Bell distributed its St. George yellow-page directory in October, 1980, the directory correctly listed the Atkin firm's telephone number as 673–4605 in both the white pages and the yellow pages of the directory. However, the same number was also erroneously listed in the yellow pages as the number for Michael D. Hughes, one attorney in the law firm of Allen, Thompson and Hughes. Thus, anyone who dialed the number listed for Mr. Hughes in the yellow pages reached the Atkin firm. To correct the problem, Mountain Bell changed Atkin's phone number and placed an intercept on Atkin's original number so that when it was dialed the caller heard the following:

> The number you have dialed, 673–4605, is no longer in service due to a directory listing error. If you are calling Atkin, Wright and Miles, the number is 629–2612 or if you are calling Allen, Thompson and Hughes, the number is 673–4892. This is a telephone company recording.

As soon as the intercept was installed, Atkin filed a complaint in district court for damages and an injunction. The trial court issued a temporary restraining order and preliminary injunction requiring Mountain Bell to reassign Atkin its original phone number and to refrain from changing that number.

The intercept had been in effect for approximately 36 hours when Mountain Bell complied with the court's order by removing the intercept and reassigning to Atkin its original number. Mountain Bell then filed in this Court a petition for extraordinary relief or, in the alternative, a petition for an interlocutory appeal from the preliminary injunction. The petitions were denied.

The Allen firm then filed a petition with the Public Service Commission to obtain relief. The PSC ordered Mountain Bell to place a live intercept on Atkin's phone number so that anyone calling 673–4605, –4606, –4607, and –4608 would be directed to the correct numbers for the Atkin and the Allen firms. Since the Atkin phone number had to be changed to comply with the PSC order, Mountain Bell filed a motion in the district court to dissolve the preliminary injunction. When the court refused, Mountain Bell filed an interlocutory appeal in this Court, and we vacated the district court order. In compliance with the PSC order, Mountain Bell placed a second intercept on the Atkin phone number in February, 1981.

The district court proceeded to the trial of Atkin's claim for damages against Mountain Bell. The jury was instructed on theories of breach of contract by Mountain Bell for changing Atkin's phone number from the one initially assigned to it and for installing the intercept; negligence by Mountain Bell in listing the Atkin phone number under both the Atkin and Allen firm names; and interference by Mountain Bell with Atkin's prospective business relationships. The jury found for the plaintiff, and awarded general damages of $25,000 and punitive damages of $30,000.

## I. BREACH OF CONTRACT

Utah Code Ann., 1953, § 54-4-1 (Supp.1983) vests the PSC with exclusive jurisdiction to adjudicate claims over matters which are delegated to the PSC by statute and for which the PSC can give appropriate relief. *See Mountain States Telephone and Telegraph Co. v. Atkin, Wright & Miles,* Utah, 681 P.2d 1258 (1984) (Mountain States I); *North Salt Lake v. St. Joseph Water & Irrigation Co.,* 118 Utah 600, 223 P.2d 577 (1950); *Provo City v. Department of Business Regulation,* 118 Utah 1, 218 P.2d 675 (1950).

Mountain Bell argues that it cannot be held liable for breach of contract in changing Atkin's telephone number because the number was changed pursuant to a PSC order and a valid tariff granted no right to the Atkin firm to the telephone number it claimed. The applicable tariff, § 20(N)(1) of Mountain Bell's General Exchange Tariff, states: "The subscriber has no property right in the telephone number nor any right to continuance of service through any particular central office, and the Telephone Company may change the telephone num-

ber or central office designation of a subscriber whenever it considers it desirable in the conduct of its business."

In *Mountain States I, supra,* a companion case to the instant case,[1] we held that customers do not have a property right in a particular phone number and that tariffs which allow Mountain Bell to change telephone numbers have the force of law. We stated:

> It is clear under the circumstances of this case that Mountain Bell did not change the Atkin firm's number arbitrarily, but did so in furtherance of adequate telephone service to all of its subscribers, including both the Atkin firm and the competing firm. Further, all tariffs promulgated by the PSC ... were incorporated into the equipment lease agreement between Mountain Bell and the Atkin firm. Finally, there was no contract between Mountain Bell and the Atkin firm that gives the firm the right to any particular phone number. Therefore, under the Public Utility Act and the applicable tariffs, the district court had no jurisdiction to issue an injunction to restore the Atkin firm's phone number.

*Id.* at 1263 (footnote omitted).

■■■ Even if the tariff does not cover yellow page listings, *see Classified Directory Subscribers Ass'n v. Public Service Commission,* 383 F.2d 510 (D.C.Cir.1967); *Pilot Industries v. Southern Bell Telephone and Telegraph Co.,* 495 F.Supp. 356 (D.S.C.1979); *State ex rel. Mountain States Telephone & Telegraph Co. v. District Court,* 160 Mont. 443, 503 P.2d 526 (1972); 74 Am.Jur.2d Telecommunications, § 32, p. 333, the change of the phone number and the placement of the intercept were pursuant to the order of the Public Service Commission. If the Commission erred in its orders, the appropriate remedy was for the plaintiff to appeal the order to this Court. The defendant can not be held liable in a subsequent action for what the PSC ordered it to do. *Occhino v. North-*

western Bell Telephone Co., 675 F.2d 220 (8th Cir.1982); *Sokol v. Public Utilities Commission,* 65 Cal.2d 247, 53 Cal.Rptr. 673, 418 P.2d 265 (1966). It follows that there was no legal basis upon which to predicate a suit in contract for damages arising from a phone number change and the placement of the intercept ordered by the PSC.

## II. PLAINTIFF'S TORT CLAIMS

■■■ Atkin's claims for negligence and for intentional interference with economic relations were subject to the district court's jurisdiction. Public utilities have no wholesale immunity from the duties imposed by tort law generally. A utility's actions which give rise to tortious or contractual liability and which do not call in question the validity of orders of the PSC or trench upon its delegated powers are subject to the jurisdiction of the district court. *See Garkane Power Association v. Public Service Commission,* Utah, 681 P.2d 1196, 1207 (1984). *Campbell v. Mountain States Telephone & Telegraph Co.,* 120 Ariz. 426, 586 P.2d 987 (Ariz.App.1978), is on point. The plaintiff charged the defendant telephone company with invasion of privacy, infliction of emotional distress, breach of contract, and interference with telephone service. The court held that if the complaint raised issues concerned only with the manner and means of providing telephone service, the Arizona Corporation Commission (Arizona's public utilities commission) had primary jurisdiction over the matter. However, because the dominant issues raised sounded simply in tort and contract, the jurisdiction of the trial court was sustained. The Arizona court stated:

> This case ... does not involve the question of whether [the telephone company is] adequately providing telephone service to the public. Further, [the plaintiff] is not seeking injunctive relief to

---

**1.** Mountain States I arose from the same facts as the instant case. In Mountain States I, Mountain Bell filed suit to recover on the bond

filed by Atkin in connection with the preliminary injunction that restrained Mountain Bell from installing the intercept.

establish broad public doctrines, or rights to service or levels of service.

*Id.*, 586 P.2d at 993.

Thus, the district court had jurisdiction to decide Atkin's claims that Mountain Bell had negligently listed Atkin's phone number in the yellow-page directory and had interfered with Atkin's prospective business relations by negligently installing, maintaining, or operating a malfunctioning intercept. The district court's adjudication of these claims does not interfere with the PSC's powers of regulation.

Mountain Bell argues, however, that the trial court erred in not ruling that Mountain Bell's liability, if any, for negligently listing the Atkin phone number under both the Atkin and Allen firm names was subject to General Exchange Tariff, § 20(E)(3) (1977), which states:

> The Telephone Company's liability arising from errors in or omissions of directory listings shall be limited to and satisfied by a refund not exceeding the amount of the charges for such of the customer's service as is affected during the period covered by the directory in which the error or omission occurs.

In *Mountain States Telephone and Telegraph Co. v. Atkin, Wright & Miles, supra,* 681 P.2d at 1263, we held that tariffs have the binding force of law. *See also Shehi v. Southwestern Bell Telephone Co.,* 382 F.2d 627, 629 n. 2 (10th Cir.1967); *First Central Service Corp. v. Mountain Bell Telephone,* 95 N.M. 509, 623 P.2d 1023, 1025 (N.M.App.1981). *Cf. Morris v. Mountain States Telephone & Telegraph Co.,* Utah, 658 P.2d 1199 (1983).

The limitation of the phone company's liability for a wrong listing is not without precedent. The high chance of inadvertent error because of the large number of listings and the possibility of large consequential damages has led a number of courts to sustain limits on a telephone company's liability for a wrong listing. *E.g., Allen v. General Telephone Co. of Northwest Inc.,* 20 Wash.App. 144, 578 P.2d 1333, 1337 n. 3 (1978); *Abraham v. New York Telephone Co.,* 85 Misc.2d 677, 380 N.Y.S.2d 969, 972

(1976). Limitations have been enforced unless the company's conduct is grossly negligent, willful, or wanton. *See Pilot Industries v. Southern Bell Telephone and Telegraph Co.,* 495 F.Supp. 356 (D.S.C. 1979); *Allen v. General Telephone Co.,* 20 Wash.App. 144, 578 P.2d 1333, 1336 (1978). We are not asked to reexamine this law.

■ "Gross negligence is the failure to observe even slight care; it is carelessness or recklessness to a degree that shows utter indifference to the consequences that may result." *Robinson Insurance and Real Estate, Inc. v. Southwestern Bell Telephone Co.,* 366 F.Supp. 307, 311 (W.D. Ark.1973). Willful misconduct goes beyond gross negligence in that a defendant must be aware that his conduct will probably result in injury. *Id.* In *Robinson,* the plaintiff attempted to show a deficiency in the procedures that the telephone company used to publish the phone book. Even though the plaintiff showed that other errors were committed, the court ruled that the evidence of carelessness was insufficient to prove gross negligence or willful misconduct.

■ Atkin produced no evidence that Mountain Bell failed to use proper care in preparing the phone book or that Mountain Bell purposely disregarded a known inaccuracy in the phone number listings. At trial, a Mountain Bell witness testified that the proofs of the yellow pages were read and were accurate. A single publication error, without further evidence, is not proof of gross negligence or willful misconduct in the publication of an erroneous number in the phone book.

## III. INTERCEPT MALFUNCTION

■ However, Atkin did adduce evidence that Mountain Bell was negligent in the operation of the intercept. Since the tariffs do not purport to limit Mountain Bell's liability with respect to the operation of an intercept, Atkin could recover damages upon proof that the operation of the intercept was negligent, that Atkin was in fact damaged, and that the amount of the dam-

ages was reasonably ascertainable. *Gould v. Mountain States Telephone & Telegraph Co.*, 6 Utah 2d 187, 309 P.2d 802 (1957). Plaintiff adduced evidence that the intercept did not always work properly, and the jury returned a general verdict of $25,-000 damages in favor of Atkin.

## IV. DAMAGES

We accord Atkin the full benefit of the evidence that reasonably supports the verdict, even though controverted. To prove damages, the plaintiff must prove two points. First, it must prove the fact of damages. The evidence must do more than merely give rise to speculation that damages in fact occurred; it must give rise to a reasonable probability that the plaintiff suffered damage as result of a breach. Second, the plaintiff must prove the amount of damages. The level of persuasiveness required to establish the *fact* of loss is generally higher than that required to establish the *amount* of a loss. *Cook Associates v. Warnick*, Utah, 664 P.2d 1161, 1166 (1983). *See Gould v. Mountain States Telephone and Telegraph Co.*, 6 Utah 2d 187, 309 P.2d 802 (1957). It is, after all, the wrongdoer, rather than the injured party, who should bear the burden of some uncertainty in the amount of damages. While the standard for determining the amount of damages is not so exacting as the standard for proving the fact of damages, there still must be evidence that rises above speculation and provides a reasonable, even though not necessarily precise, estimate of damages. *Winsness v. M.J. Conoco Distributors*, Utah, 593 P.2d 1303 (1979); *Monter v. Kratzers Specialty Bread Co.*, 29 Utah 2d 18, 22, 504 P.2d 40, 43 (1972); *Gould v. Mountain States Telephone and Telegraph Co.*, 6 Utah 2d 187, 309 P.2d 802 (1957). The amount of damages may be based upon approximations, if the fact of damage is established, and the approximations are based upon reasonable assumptions or projections. *E.g.*, *Bastian v. King*, Utah, 661 P.2d 953 (1983); *Winsness v. M.J. Conoco Distributors, supra.*

In this case, Atkin offered no proof whatsoever of lost net income. Proof of loss of gross income only is an insufficient foundation for proof of amount of damages. *Garcia v. Mountain States Telephone & Telegraph Co.*, 315 F.2d 166, 169 (10th Cir.1963). *See Joy Floral Co. v. South Central Bell Telephone Co.*, Tenn. App., 563 S.W.2d 190 (1977); *Wade v. Southwestern Bell Telephone Co.*, Tex.Civ. App., 352 S.W.2d 460 (1961).

Furthermore, Atkin did not prove that its reduction in gross income, (i.e., the fact of damage), was caused by the negligent operation of the intercept. The evidence did not raise more than a speculative possibility of the fact of damage or of the amount of damages incurred. Atkin's evidence showed only that the firm income declined for a three month period during only a small part of which the intercept was in place. Although the second intercept did not always function properly, the testimony indicated that clients were able to obtain Atkin's phone number. That Atkin's quarterly gross revenues decreased for a three month period does not establish that it was the occasionally malfunctioning intercept which caused the reduced revenues. To attribute a three-month decline in revenues to the short one-month intercept is only speculative. The incomes of law firms generally fluctuate from year to year and throughout the months of each year. Atkin's own witness confirmed that such fluctuations also occur within that firm. Atkin also conceded that one attorney in the firm could substantially affect the firm's income for a month or a quarter of the year by the manner in which he turned in his billable time and billed his clients. In addition, the members of the firm were devoting substantial periods of time to the firms' own litigation against Mountain Bell.

Mountain Bell's first intercept lasted only 36 hours. A client or potential client could reach the firm by calling information for the number. One witness testified that he was unable to reach the Atkin firm for legal advice, but that his legal problem was resolved before he was able to retain coun-

sel. The specific type of service needed by that client and the amount usually charged for the type of service was not put into evidence. Another witness testified that she had difficulty reaching the Atkin firm when she wanted to have a will prepared but that she finally was able to contact the firm and one of the attorneys drafted the will. Two other witnesses testified that they had difficulty reaching the Atkin firm, but Atkin was not able to attribute any specific loss to that difficulty. Finally, one of the Atkin attorneys testified that he lost a client due to the malfunctioning intercept. However, there was no evidence as to what the value of the lost fees was.[2]

## IV. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS

 Atkin also claims that Mountain Bell intentionally interfered with its prospective economic relations. *Leigh Furniture and Carpet Co. v. Isom*, Utah, 657 P.2d 293 (1982), outlined the elements of a cause of action for intentional interference with prospective economic relations. The plaintiff must prove: (1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) for an improper purpose or by improper means, and (3) that the interference caused injury to the plaintiff. *Id.* at 304. Conduct is not actionable, however, if the defendant only acted to protect his own legitimate interests. *See id.* at 307, 309 & n. 10. In the instant case, there is no evidence that Mountain Bell harbored any improper intent or used any improper means in dealing with Atkin. Nor is there sufficient evidence that the plaintiff was damaged. The intercept was intended only to solve a problem created by an inadvertent mistake. In short, the claim that Mountain Bell intentionally interfered with Atkin's economic relations is without merit.

## V. PUNITIVE DAMAGES

 The award of punitive damages must be vacated since the plaintiff did not prove compensatory damages. *Maw v. Weber Basin Water Conservancy District*, 20 Utah 2d 195, 436 P.2d 230 (1968); *Graham v. Street*, 2 Utah 2d 144, 270 P.2d 456 (1954). Furthermore, the award of punitive damages was error for another reason. Punitive damages "are not intended as additional compensation to a plaintiff, [and] must, if awarded, serve a societal interest of punishing and deterring outrageous and malicious conduct which is not likely to be deterred by other means." *Behrens v. Raleigh Hills Hospital, Inc.*, Utah, 675 P.2d 1179, 1186 (1983). Before punitive damages may be awarded, the plaintiff must prove conduct that is willful and malicious, *Leigh Furniture and Carpet Co. v. Isom*, Utah, 657 P.2d 293, 312 (1982); *First Security Bank of Utah v. J.B.J. Feedyards, Inc.*, Utah, 653 P.2d 591, 598 (1982); *Elkington v. Foust*, Utah, 618 P.2d 37, 41 (1980); *Kesler v. Rogers*, Utah, 542 P.2d 354, 359 (1975), or that manifests a knowing and reckless indifference and disregard toward the rights of others. *Branch v. Western Petroleum, Inc.*, Utah, 657 P.2d 267, 277–78 (1982); *Terry v. Zions Cooperative Mercantile Institution*, Utah, 605 P.2d 314, 327 (1979). It follows that punitive damages were erroneously awarded.

Reversed. Costs to appellant.

HALL, C.J., and HOWE and DURHAM, JJ., concur.

ZIMMERMAN, J., does not participate herein.

---

**2.** In *Southwestern Bell Telephone Co. v. Reeves*, Tex.Civ.App., 578 S.W.2d 795 (1979), the court sustained a $10,000 damage award to a lawyer who changed his phone number and arranged for an intercept to be placed on the old number. The suit arose because the phone company failed to install the intercept. A client of the lawyer testified that when he could not reach the plaintiff after several attempts, he contacted other lawyers and spent approximately $25,000 in legal fees during the year. In this case, Atkin made no similar showing.