**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 17, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DALE K. BARKER CO., P.C.,

　　Plaintiff - Appellant,

v.

VALLEY PLAZA,

　　Defendant - Appellee,

LARRY J. SUMRALL, individually
and d/b/a North Valley Feed;
PATRICIA A. SUMRALL,
individually,

　　Defendant-Cross-Claimants -
　　Appellees,

v.

DALE K. BARKER, JR., an
individual,

　　Cross-Claim-Defendant -
　　Appellant.

No. 12-4147
(D.C. No. 2:03-CV-00903-CW)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, **HOLLOWAY**, and **GORSUCH**, Circuit Judges.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

We can't say exactly when the trouble started for Larry and Patricia Sumrall, but it had to be by the time they hired Dale K. Barker, Jr. and his accounting firm. The Sumralls needed professional help with past-due tax returns and other amounts they owed the IRS, and they turned to Mr. Barker. At the end of the day, though, the Sumralls found themselves having to pay the IRS over $222,000 in taxes, penalties, and interest. And then they found themselves named as defendants in a lawsuit brought by Mr. Barker (for simplicity's sake we use his name to refer to him and his company collectively, except where the distinction is relevant). In a diversity breach of contract claim, Mr. Barker contended that the Sumralls failed to pay their bills in full. By this time, however, the Sumralls were convinced that Mr. Barker had contributed to their problems with the IRS. So they replied with counterclaims of their own — for breach of contract, negligence, and breach of fiduciary duty, among other things.

After a bench trial, the district court concluded that Mr. Barker's services had been deficient and cost the Sumralls dearly. The court held that Mr. Barker's bills were unjustified; that he was entitled to no fees beyond those he'd already been paid; and that the Sumralls were entitled to compensation from Mr. Barker for their counterclaims. Mr. Barker now appeals virtually every aspect of that judgment. We have considered all of his arguments closely, but we find none persuasive and discuss here only the most salient.

# I

Mr. Barker begins by arguing that the district court should have dismissed as time-barred the Sumralls' claims for breach of fiduciary duty and negligence against him personally. As he points out, the counterclaims the Sumralls originally filed named only his accounting firm as a defendant. Not until well into the litigation — and well after the applicable statute of limitations had run — did the Sumralls seek (and obtain) the district court's leave to amend their counterclaims to add Mr. Barker personally as a counterclaim defendant.

Before analyzing this argument, it's important to clear up a question of classification. For reasons we'll likely never know, after they received authorization from the district court to add Mr. Barker as a counterclaim defendant, the Sumralls instead styled Mr. Barker in their pleadings as a *cross-claim* defendant. While this surely was wrong — cross-claims are filed "by one party against a coparty," Fed. R. Civ. P. 13(g), and Mr. Barker most certainly was *not* the Sumralls' coparty — no one did anything about it. The Sumralls' taxonomical mistake, however, does not compel us to repeat the error. We may "treat the [Sumralls'] pleading as though it were correctly designated" and "construe[] [it] so as to do justice." *Id.* R. 8(c)(2), (e). In other words, we proceed as if the amendment added Mr. Barker as a counterclaim defendant, as instructed by the district court.

With that much cleared up, we reach the question of the amended counterclaim's timeliness. The addition of Mr. Barker was, we think, timely — despite its late filing — because it "related back" to the filing of the Sumralls' original counterclaims. Under the federal rules governing civil procedure, an amended pleading "relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading." *Id.* R. 15(c)(1)(B). Practice under Rule 15 also usually involves an "inquir[y] into whether the opposing party has been put on notice regarding the [amended] claim." 6A Charles Alan Wright et al., *Federal Practice & Procedure* § 1497 (3d ed. 2010). In this case, both of these inquiries are easily satisfied, just as the district court held. There's little question the amended counterclaims against Mr. Barker arise out of the same conduct, transaction, or occurrence as the original counterclaims against his accounting firm: the amended counterclaims are *identical* but for the addition of Mr. Barker as a defendant alongside his company. Just as clearly, Mr. Barker had notice of the counterclaims when they were first filed against his firm.

Neither does a different result obtain if Utah's corresponding relation-back rule applies, because Utah R. Civ. P. 15(c) and Fed. R. Civ. P. 15(c) are substantially similar. *See Tucker v. State Farm Mut. Auto. Ins. Co.*, 53 P.3d 947, 950 n.2 (Utah 2002) (federal rules and interpretations are persuasive where Utah

-4-

rules are "substantially similar"). So while there may be "considerable uncertainty whether a federal court sitting in diversity jurisdiction is free to apply the relation-back principle embodied in Rule 15(c) instead of a conflicting state rule on the subject," it matters little because both rules ask the same questions and lead to the same result. 6A Wright et al., *supra*, § 1503.

Mr. Barker argues that Utah law requires a different result. The case he cites, however, isn't on point. *Sharon Steel Corp. v. Aetna Cas. & Sur. Co.*, 931 P.2d 127, 132-33 (Utah 1997), doesn't address the question we face, but a much trickier one: When does a defendant's *cross-claim* against a co-defendant concern the same subject matter as *the plaintiff's complaint*? As we have already seen, our case — properly understood — involves counterclaims, not cross-claims, and the question we face thus concerns whether the Sumralls' amended counterclaim arises out of the same transaction or occurrence as their first. As we've explained, it does.

## II

Mr. Barker says the district court erred in denying him damages for his breach of contract claim. After trial, the court held that the Sumralls had already paid the full value of his services and owed Mr. Barker no more. Mr. Barker argues this was error because he sent periodic statements to the Sumralls reflecting sums due, which they signed. It seems Mr. Barker is seeking to rely here on "account stated" principles under which the parties to a contractual

-5-

relationship may form a new and separate binding agreement about the correctness of the amount due. *See Dementas v. Estate of Tallas*, 764 P.2d 628, 634 (Utah Ct. App. 1988). But, as the district court observed, Mr. Barker faces a difficulty in deploying this theory: the Sumralls never acknowledged any agreement about the amount due and its correctness. The boilerplate they signed had the Sumralls "acknowledge[] and accept[] . . . the terms of . . . [the] Service Agreement[s]" and the like. Aplt. App. at 1914. But none of this constituted "an agreement between the parties as to *the amount due* and *the correctness* of that amount." *Dementas*, 764 P.2d at 634 (emphasis added).

Alternatively, Mr. Barker contends that the district court erred in finding the Sumralls had already paid the full value of his services because (among other things) the district court relied on payments the Sumralls made outside the statute of limitations. We see no evidence of this in the record, however. The district court explicitly stated it was excluding payments the Sumralls made outside the limitations period. *See* Aplt. App. at 142. And Mr. Barker points to nothing that suggests the court didn't do what it says it did.

In his reply brief, Mr. Barker offers still other reasons why, he thinks, the district court's estimation of the value of his services was flawed. The Sumralls have asked us to strike these arguments on the ground that they have been raised too late in the process. Though the Sumralls have a point, even considering Mr. Barker's late-blooming arguments they do not persuade us (as they must to

-6-

warrant reversal) that the district court's factual findings about the value of his services were "more than possibly or even probably wrong but pellucidly so." *See United States v. Ludwig*, 641 F.3d 1243, 1247 (10th Cir. 2011).

III

Next, Mr. Barker challenges the district court's calculation of damages on the Sumralls' negligence and breach of fiduciary duty claims. The district court awarded $70,296.91, and Mr. Barker says this award was speculative. In fact, however, the Sumralls ultimately paid the IRS $222,001.27 in taxes, interest, and penalties. Relying on the Sumralls' expert's testimony, the district court found that, but for Mr. Barker's misconduct, the Sumralls could have settled the claim with the IRS for $151,704.36, meaning they needlessly incurred $70,296.91.

Mr. Barker replies that there's no proof that the Sumralls' tax liability could have been settled, and no proof showing the Sumralls incurred additional interest and penalties because of him. But one of the Sumralls' experts testified that Mr. Barker owed the Sumralls a duty to complete their civil matter "promptly after 1996," and that a resolution at that time "should have been vigorously pursued . . . and [the matter] settled fairly quickly." Aplt. App. at 1445, 1448. The Sumralls' experts also provided at least two estimates they believed were reasonable "starting point[s]" for use as a "frame of reference" in calculating the cost to the Sumralls of not settling earlier. *Id.* at 1530-33, 1548, 2269. Although Mr. Barker disputes the best method of estimating damages, there is no question

that evidence exists in the record to support the positions the district court took. It is settled, too, that a "precise" amount of damages need not be proven; a district court may estimate damages "based upon approximations, . . . reasonable assumptions[,] or projections." *Atkin Wright & Miles v. Mountain States Tel. & Tel. Co.*, 709 P.2d 330, 336 (Utah 1985). In our view, that's what happened here.

IV

Mr. Barker next pursues various complaints about the exclusion and admission of expert testimony.

To begin, Mr. Barker says the district court shouldn't have struck his expert report and excluded him from testifying as an expert. But Mr. Barker's report did not disclose a single expert opinion, as required by Rule 26, and the district court acted within its discretion to prohibit him from testifying as an expert as a result. *See* Fed. R. Civ. P. 26(a)(2)(B)(i). Mr. Barker replies that he didn't need to file an expert report in the first place because he wasn't an expert "retained or specially employed to provide expert testimony." *Id.* R. 26(a)(2)(B). But even experts who aren't required to file reports still need to disclose "a summary of the facts and opinions to which [they are] expected to testify" — something Mr. Barker failed to do. *Id.* R. 26(a)(2)(C)(ii).

Mr. Barker says the district court also erred in excluding his (other) expert, Michael Kaplan. When Mr. Kaplan had produced only a "preliminary" report by the expert filing deadline, Mr. Barker sought an extension of time. The district

court denied the request and effectively excluded Mr. Kaplan from the case after concluding that Mr. Barker had failed to show good cause for an extension of time because he hadn't identified when he had retained Mr. Kaplan, what (if any) work Mr. Kaplan had done up to that point, or even what Mr. Kaplan's opinions would be. Extending the filing deadline, the court also found, would require postponing the trial. On these essentially undisputed facts we fail to see any abuse of discretion in the district court's chosen course.

Turning from his experts to the Sumralls', Mr. Barker says the district court erred by allowing their experts, Keith Prescott and Val Oveson, to file a joint report. We see no reason to think the practice always and inherently impermissible, as Mr. Barker seems to suppose. Co-authored expert reports aren't exactly uncommon. *See, e.g.*, *Miller v. Pfizer, Inc.*, 356 F.3d 1326, 1332-34 (10th Cir. 2004); *103 Investors I, L.P. v. Square D Co.*, 372 F.3d 1213, 1215 (10th Cir. 2004); *Ruff v. Ensign-Bickford Indus., Inc.*, 168 F. Supp. 2d 1271, 1286-87 (D. Utah 2001). Here, Mr. Prescott and Mr. Oveson reviewed the same materials and, working together, came to the same opinions. Because they were both prepared to testify to all the opinions in the report, we see no reason why it would be inherently impermissible for them to file a joint report. Perhaps the practice could prove problematic in other circumstances — if, for example, it isn't clear whether both experts adhere to all of the opinions in the report and they do not delineate which opinions belong to which expert — but Mr. Barker identifies no

reason to fear such confusion here. *Cf. Dan v. United States*, No. CV-01-25MCA, 2002 WL 34371519, at *2-3, *5 (D.N.M. Feb. 6, 2002) (rejecting joint report that included collective and individual opinions but didn't identify an individual expert).

Alternatively, Mr. Barker says the district court abused its discretion in permitting various aspects of Mr. Prescott's and Mr. Oveson's testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and due process principles. After carefully reviewing these claims, we can report that none warrants reversal. By way of example, Mr. Barker says the experts were allowed to testify about "a number of [professional] standards purportedly violated," despite having listed only one such standard in their report. Aplt. Br. at 28. But the testimony Mr. Barker points us to includes each expert's statement that they *reviewed* multiple accounting standards in preparing their report — not that, in their expert opinion, Mr. Barker *violated* all those standards. *See* Aplt. Reply Br. at 8 (citing Aplt. App. at 1398, 1549). And it is not our role to hunt through the record for testimony Mr. Barker doesn't himself identify. *See Aquila, Inc. v. C.W. Mining*, 545 F.3d 1258, 1268 (10th Cir. 2008) ("[R]eading a record should not be like a game of Where's Waldo?").

V

Mr. Barker contests still other pre- and post-trial rulings. He contends, for example, that the district court abused its discretion when it prohibited him from

using certain documents at trial. But Mr. Barker failed to produce these documents in discovery, despite requests and orders, and he disgorged them only just before trial and well after the close of discovery. The decision to exclude these materials from Mr. Barker's case-in-chief (and permit the Sumralls to use them for rebuttal and cross-examination) was, in these circumstances, easily within the district court's discretion. *See* Fed. R. Civ. P. 37(b)(2)(A)(ii); *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1320 (10th Cir. 2011).

Turning to the district court's post-trial decision to award the Sumralls attorney fees, Mr. Barker says the Sumralls didn't properly categorize all fees as attributable to compensable, possibly compensable, or non-compensable claims, as parties generally must under Utah law. *See Foote v. Clark*, 962 P.2d 52, 55 (Utah 1998). But categorization like that isn't required when the fees incurred in connection with compensable claims and non-compensable claims are closely related and inextricably tied together. *See Brown v. David K. Richards & Co.*, 978 P.2d 470, 475 (Utah Ct. App. 1999). That's the situation here. As the district court explained: "Because the factual overlap among the[] causes of action is significant, . . . it would not be feasible to allocate attorneys fees among them." Other than merely disagreeing with the court's factual finding on this score, Mr. Barker doesn't try to explain how it is clearly erroneous, as he must for us to reverse. *See Ludwig*, 641 F.3d at 1247. Neither do his many line-item

-11-

challenges to the fee award convince us that the district court abused its discretion in any of these particulars.

The appellees' motion to strike is denied.  The judgment is affirmed.

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge